**KIMBROUGH & COMPANY,**
Plaintiff/Appellant,

v.

**Lawrence SCHMITT, II,**
Defendant/Appellee.

Court of Appeals of Tennessee,
Western Section at Jackson.

Sept. 6, 1996.

Permission to Appeal Denied by
Supreme Court Dec. 23, 1996.

Roger A. Stone, Stone, Higgs & Drexler, Richard E. Fulton, Memphis, for Appellant.

Raymon Sauer, for Appellee.

HIGHERS, Judge.

The principal issue in this case is whether a liquidated damages provision in a contract for deed was properly struck down in the court below.

## I. Facts

In 1988, Lawrence Schmitt, appellee, contracted to buy residential property located at 6511 Rocky Park in Memphis, Tennessee, from Kimbrough & Co. for $72,450.00. The terms of the contract provided that the financing period would expire at the end of three years. Three years following the execution of the contract, the parties agreed to renew the contract based on the then-existing sales price of $71,658.57. Schmitt made payments satisfactorily from 1988 through February 1993. In accordance with the terms of the contract, the contract was called due on March 1, 1993, at which time Kimbrough accelerated the note and the entire debt was due and owing. Kimbrough took possession of the property on May 4, 1993, following Schmitt's unsuccessful attempts to sell the property.

The contract contained the following provision governing the seller's damages in the event of a default by the buyer:

17. *NON–PAYMENT BY PURCHASER/LIQUIDATED DAMAGES/SELLER'S OPTION.* In exchange for Seller's agreement to enter into this contract and because damages for breach of the contract are difficult to ascertain, if Purchaser defaults in any payment required by this contract or the promissory note, Purchaser agrees to pay to Seller as liquidated damages in an amount equal to 15% of the original contract price. The liquidated damages amount shall be reduced by 1% for each year in which Purchaser has made all payments as required by the promissory note. This use of this right to liquidated damage is entirely optional with Seller. In addition, if purchaser defaults in any payment required by the promissory note, purchaser shall become a tenant at will from the date of default and shall be liable to Seller for rent in an amount equal to the monthly payment required by the promissory note. Purchaser shall also be liable to Seller for all payments past due, including late charges, and damages to the property, and Purchaser shall bear the cost of all collections, including court costs and attorney's fees. (TR 11)

In April 1993, Kimbrough demanded 13% of the original sales price of $71,658.67, and interest at a rate of 10% from Schmitt, which Schmitt refused to pay. Kimbrough sold the house to another purchaser on July 30, 1993, for $84,900.00, under an arrangement whereby Kimbrough would provide one hundred percent financing of the purchase price.

Following a hearing, the trial court held that the liquidated damages clause, when viewed prospectively, was invalid as a penalty. The court reasoned that damages would be easy to calculate in the present case by subtracting the amount realized from the sale of the property from the actual debt. The trial court stated in its final order, "The liquidated damage provision would give 15% to the plaintiff if even the first payment were missed. This is totally unreasonable."

Kimbrough argues on appeal that the damages upon default for the sale of subject property were difficult or impossible to calculate at the time of contracting and, therefore, the liquidated damages provision should be enforced. Kimbrough's position is that at the time the contract was written, there was no way accurately to estimate how long it would take to sell the property and no way accurately to estimate the price at which the property would ultimately sell. Moreover, Kimbrough argues, the provision calling for 15% of the original balance, decreasing by 1% for each year paid, is neither excessive nor a penalty. Finally, Kimbrough argues that it is entitled to attorney's fees, costs and expenses if it prevails in this appeal.

## II. Legal Analysis

In *V.L. Nicholson Co. v. Transcon Investment & Financial Ltd.*, 595 S.W.2d 474 (Tenn.1980), the Supreme Court stated the law governing liquidated damages as follows:

> The term 'liquidated damages' means a sum stipulated and agreed upon by the parties at the time they enter their contract, to be paid to compensate for injuries should a breach occur. 22 Am.Jur.Damages § 212 (1965). See *Railroad v. Cabinet Co.*, 104 Tenn. 568, 58 S.W. 303 (1900). The reason for allowing parties to stipulate the amount of damages is to create certainty where damages are likely to be uncertain and not easily proven. *Railroad v. Cabinet Co.*, supra. The amount stipulated should be reasonable in relation to the terms of the contract and the certainty with which damages can be measured; there must exist a reasonable relationship between the amount and what might reasonably be expected in the event of a breach. *Id.* If the provision is a reasonable estimate of the damages that would occur from a breach, then the provision is normally construed as an enforceable stipulation for liquidated damages. See *City of Bristol v. Bostwick*, 146 Tenn. 205, 240 S.W. 774 (1921); 22 Am.Jur.Damages § 227 (1965).

*Id.* at 484 (emphasis added).

 Courts, however, will not enforce a penalty. A penalty, as opposed to a reasonable measure of liquidated damages, is inserted not to compensate for breach, but rather to punish for default "or [as] security for actual damages which may be sustained by reason of non-performance, and it involves the idea of punishment." *Harmon v. Eggers*, 699 S.W.2d 159, 163 (Tenn.App.1985). Because forfeitures and penalties are not favored, any doubt as to whether a sum is a penalty or liquidated damages will generally be resolved as the former. *Harmon*, 699 S.W.2d at 163; *Beasley v. Horrell*, 864 S.W.2d 45, 50 (Tenn.App.1993).

 Whether a provision for liquidated damages is reasonable is determined prospectively, at the time that the parties entered into the contract, rather than retro-

spectively. *Kendrick v. Alexander*, 844 S.W.2d 187, 191 (Tenn.App.1992). Concomitantly, recovery will be limited to actual damages if the amount stipulated as liquidated damages is so greatly in excess of actual damages that it is, in effect, a penalty. *Beasley*, 864 S.W.2d at 50; *Harmon*, 699 S.W.2d at 163. A liquidated damages provision must be reasonable in relation to the anticipated damages from breach and must not be grossly disproportionate to the actual damages that occur. *Beasley*, 864 S.W.2d at 50. "[E]ven if the amount designated as liquidated damages bears a reasonable relationship to the amount of foreseeable damages from breach, courts will not enforce a provision that results in a forfeiture of an amount greatly in excess of the amount of actual damages." *Id.* at 50.

In *Eller Brothers, Inc. v. Home Federal Savings and Loan Association*, 623 S.W.2d 624 (Tenn.App.1981), this court refused to enforce the liquidated damages provision at issue because the stated amount was so far in excess of actual damages that it was held to be unreasonable and unenforceable as a penalty. *Id.* at 628–29. The construction contract in *Eller Brothers* contained a $500.00 per day damages-for-delay clause. *Id.* at 625. The proof showed that the actual damages were either $97.00 per day or $74.00 per day. This court held that $500.00 per day was so far in excess of either figure that it was totally unreasonable and unenforceable. *Id.* at 628–29. See also *Airline Constr. v. Barr*, 807 S.W.2d 247, 260 (Tenn.App.1990).

Similarly, in *Beasley*, 864 S.W.2d 45, the court held that the liquidated damages provision was unreasonable and unenforceable because the actual damages suffered were grossly disproportionate to the remainder of the amount due under the note. *Id.* at 51.

In *Smith v. American General Corp.*, No. 87–79 II, 1987 WL 15144 (Tenn.App. Aug. 5, 1987), the court stated:

> The courts have looked to the actual damages sustained as a circumstance reflecting upon the reasonableness of the stipulated damages, **but it should be remembered that the true test of reasonableness is the possible damages anticipated by the**

parties at the time they made the contract.

*Id.* at *10 (emphasis added).

 It is apparent from the foregoing authorities that courts will employ both a prospective and a retrospective analysis in evaluating the reasonableness of a liquidated damages provision. Although the reasonableness of a damages forecast should be judged at the time that the contract was entered into, courts may consider damages actually sustained by the time of trial in evaluating the reasonableness of the preestimate. That is, a wide disparity between the stipulated damage amount and actual damages may indicate that a damage forecast was unreasonable at the time of contracting. It is undisputed that Kimbrough suffered no actual damages, as the property was sold at a substantial profit.

In assessing reasonableness at the time of contracting, one of the primary factors to consider is whether damages would be difficult to estimate or prove in the event of a breach. The measure of damages for breach of an agreement to purchase real estate is the difference between the actual contract price and the fair market value of the property at the time of the breach, plus any special damages that were within the reasonable contemplation of both parties when the contract was made. *Turner v. Benson,* 672 S.W.2d 752 (Tenn.1984). In the present case, it would not have been difficult for Kimbrough to ascertain or prove the difference between the contract price that Schmitt agreed to pay and the actual or fair market value at the time of the breach.

The pivotal question, however, is whether the stipulated amount is a reasonable estimate of probable loss. In our opinion, 15% of the purchase price, reduced by 1% each year that payments are satisfactorily made, is not a reasonable forecast of damages likely to occur in the event of a default by the buyer. If Schmitt missed even the first payment, he would suffer the unconscionable consequences of both forfeiting the property and having to pay 15% of the entire purchase price.

### III. Conclusion

Because Kimbrough suffered no actual damages, damages were not difficult to estimate at the time of contracting, and 15% of the purchase price is not a reasonable forecast of damages, we affirm the judgment of the trial court. Costs on appeal are adjudged against Kimbrough, for which execution may issue if necessary.

CRAWFORD, P.J., W.S., and LILLARD, J., concur.